UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN PETERSON,

                Plaintiff,

v.

RAVINA POLAVARAPU, et al.,

                Defendants.

                                    /

Case No. 2:20-cv-13266

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS OPINION AND ORDER

Plaintiff Toran Peterson, a state prisoner in the custody of the Michigan Department of Corrections ("MDOC"), recently filed a pro se civil rights complaint under 42 U.S.C. § 1983. ECF 1. Plaintiff also applied for in forma pauperis status, ECF 2, and filed three motions. The first motion sought to exclude the present case from the pro se prisoner early mediation program. ECF 3. The second and third motions sought for the Court to order MDOC to disclose Defendants' home addresses. ECF 4, 7. For the reasons stated below, the Court will grant the motion to exclude the case from the mediation program and deny the motions to order MDOC to disclose Defendants' home addresses.

### BACKGROUND

Plaintiff is incarcerated at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan. ECF 1, PgID 1. All Defendants were allegedly employed by MDOC during the events in question. Defendants Polavarapu and Emami are psychiatrists;

1

Defendant Zimmerman is a psychologist at ARF; Defendant Zell is or was a mental health professional at ARF; Defendant Fahn is the director of MDOC's mental health program; and Defendant Washington is the director of MDOC. *Id.* at 1–2; ECF 7, PgID 81.

The claims here concern a hearing and a decision to involuntarily treat Plaintiff with a medication named Haldol. Plaintiff alleged that when he arrived at ARF, prisoners told him that Defendant Polavarapu typically raised the dosage for prisoners' medication and placed them on Haldol. ECF 1, PgID 2. At Plaintiff's first meeting with his treatment team, Defendant Polavarapu stated that he wished to take Plaintiff off his current medication regimen and raise the dosage. *Id.* Plaintiff allegedly pleaded with Defendant Polavarapu not to do that because he was recently placed on the medication and was not used to it. *Id.* After the team meeting, Plaintiff allegedly saw Defendant Polavarapu three more times for five minutes or less. *Id.*

A month later, Defendant Polavarapu informed Plaintiff that he was preparing documents to have Plaintiff involuntarily treated because the nursing staff had informed him that Plaintiff would ask the staff to empty the contents of a capsule into water, drink some of the water, and then dispose of the rest of the water. *Id.* Defendant Polavarapu also informed Plaintiff that he planned to start Plaintiff on Haldol, which Plaintiff received shortly after. *Id.*

After taking Haldol for a week, Plaintiff began to experience muscle tightness, itching, shaking of the hand, and difficulty breathing and swallowing. *Id.* He

2

mentioned these side effects to nurses and his "psych" who said that they notified Defendant Polavarapu. *Id.*

At some point, Defendant Polavarapu changed his diagnosis of Plaintiff's condition to paranoid schizophrenia and Plaintiff later had a hearing before Defendants Emami, Zimmerman, and Zell to determine whether he was mentally ill and should be involuntarily treated. *Id.* at 3. The hearing began with Defendant Polavarapu explaining why he sought to involuntary treat Plaintiff. *Id.* Although Plaintiff was entitled to cross-examine Defendant Polavarapu, Defendant Polavarapu allegedly became hostile and refused to answer Plaintiff's questions. *Id.* And when Plaintiff asked Defendant Polavarapu to describe Plaintiff's paranoid delusions, Defendant Polavarapu allegedly said that Plaintiff had filed a grievance about him and had complained that the staff was "messing with [his] food." *Id.*

To justify the Haldol prescription, Defendant Polavarapu explained that Plaintiff became assaultive when he was improperly medicated, that Plaintiff was having trouble functioning in the unit, and that this incarceration was Plaintiff's second. *Id.* Defendant Polavarapu also accused Plaintiff of asking the staff to open capsules and pour the contents in a glass. *Id.* Plaintiff objected to Defendant Polavarapu's allegations and informed the hearing panel that Defendant Polavarapu was retaliating against him for filing a grievance about him. *Id.*

Two minutes after Plaintiff was excused from the hearing, a nurse allegedly arrived to give him an injection, even though he was not informed of the hearing panel's decision. *Id.* Following the injection, Plaintiff allegedly experienced blurred

3

vision, restless legs, and an inability to sleep. *Id.* at 4. He also began rocking back and forth. *Id.* Plaintiff then allegedly informed his "psych" of these problems, and the "psych" notified Defendant Polavarapu, who did nothing. *Id.* Eventually, Plaintiff allegedly tried to hang himself because he felt like he was being tortured. *Id.* In the end, Plaintiff appealed the panel's decision, but Defendant Fahn upheld the hearing panel's decision. *Id.* at 8.

Plaintiff asserted several claims against Defendants. For Defendant Polavarapu, Plaintiff asserted a violation of his First Amendment right to free speech because Plaintiff's diagnosis was in retaliation for filing a grievance about him. *Id.* at 3. Plaintiff also asserted that Defendant Polavarapu violated his Eighth Amendment right because he failed to address side effects of the medication, and his Fourteenth Amendment right to due process because he made false allegations about Plaintiff. *Id.* Last, Plaintiff asserted that Defendant Polavarapu's diagnosis and comments about Plaintiff constituted the torts of abuse and neglect, gross negligence, and intentional infliction of emotional distress in violation of state law. *Id.* at 5.

For Defendants Emami, Zimmerman, and Zell, Plaintiff asserted that those Defendants violated his Eighth and Fourteenth Amendment rights for failing to investigate facts. *Id.* at 3.

For Defendants Washington and Fahn, Plaintiff asserted that those Defendants violated his Fourteenth Amendment right because they had a policy to not investigate facts in documents during an involuntary treatment hearing. *Id.* at 4–5. Plaintiff also claimed that those Defendants violated his Eighth and Fourteenth

Amendment rights by allowing Defendant Polavarapu to lie at the hearing. *Id.* at 5. And their policies of not requiring a fact check or investigation of the hearing panel's findings constituted the torts of abuse and neglect, gross negligence, and intentional infliction of emotional distress in violation of state law. *Id.* Last, Plaintiff also claimed that Defendant Fahn's failure to grant his appeal violated his Fourteenth Amendment right to due process. *Id.*

For damages, Plaintiff seeks compensatory and punitive damages from Defendants in their personal and official capacities. *Id.* at 1–2, 5–6. He also wants the Court to order MDOC and the Corrections Mental Health Program to create a policy which requires an investigation of facts used against a prisoner by a hearing panel. *Id.* at 5.

## LEGAL STANDARD

Because the Court granted Plaintiff's in forma pauperis application, ECF 5, the Court must review the complaint under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(2). Under both provisions, the Court must dismiss a claim that is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief[.]" 42 U.S.C. § 1997e(c)(2); *see* 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

I. <u>Review of the Complaint</u>

Although "the interest of the State in . . . treating mentally ill patients is strong," "[t]he interest of the prisoner in not being arbitrarily classified as mentally

5

ill and subjected to unwelcome treatment is also powerful[.]" *Vitek v. Jones*, 445 U.S. 480, 495 (1980). As a result, a criminal conviction and sentence of imprisonment "do not authorize the State to classify [an individual] as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." *Id.* at 493–94. Because Plaintiff has alleged issues with his diagnosis and involuntary commitment hearings, the Court finds that Plaintiff may have stated plausible claims against Defendants.

Still, because "sovereign immunity bars a § 1983 suit for monetary damages against an official in his official capacity[,]" the Court will dismiss Plaintiff's claims for monetary relief against Defendants in their official capacity. *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989)). The Court will now address the remaining motions.

II. <u>Motion to Exclude</u>

In Plaintiff's first motion, Plaintiff stated that he did not wish to participate in the Court's early mediation program and asked the Court to exclude his case from early mediation. ECF 3, PgID 76. Because the Pro Se Prisoner Early Mediation Program is voluntary, the Court will grant the motion to exclude the case from the Mediation Program. ECF 3.

III. <u>Motions to Order MDOC to Provide Defendants' Addresses</u>

In Plaintiff's remaining motions, he asked the Court to order MDOC to provide the United States Marshals Service with the home addresses of Defendants so that the Marshals can serve the complaint. ECF 4, 7. Because "[P]laintiff is proceeding in

6

forma pauperis the court is obligated to issue [P]laintiff's process to a United States Marshal who must in turn effectuate service upon [] [D]efendants[.]" *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). Ordinarily, a plaintiff must provide the Court with the defendants' addresses because the Court is not obligated "to actively seek out the address of a defendant so that service can be effectuated[.]" *Fitts v. Sicker*, 232 F. App'x 436, 444 (6th Cir. 2007).

Here, the five Defendants may no longer be working inside the correctional facility where the cause of action arose. Although the Court could order MDOC to provide the Marshals Service with Defendants' last-known addresses, *id.* at 443, the Court will decline to do so now. Rather, the Court believes the more prudent approach is to follow the usual practice of directing the Marshals Service to serve the appropriate papers on Defendants at the addresses listed in the complaint. If the Marshals Service fails, the Court will consider directing MDOC in a future order to provide the last-known addresses for the defendants. The Court will therefore deny without prejudice Plaintiff's motions to have MDOC provide the Marshals Service with Defendants' home addresses.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the claims for monetary relief against Defendants in their official capacities is **DISMISSED**.

**IT IS FURTHER ORDERED** the motion to exclude the case from the pro se prisoner early mediation program [3] is **GRANTED.**

**IT IS FURTHER ORDERED** that the motions to order MDOC to provide the United States Marshal with the home addresses for Defendants Polavarapu, Emami, Zimmerman, Zell, and Fahn [4, 7] are **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the United States Marshal must attempt to **SERVE** the appropriate papers and this order on Defendants Polavarapu, Emami, Zimmerman, and Zell at the Gus Harrison Correctional Facility, 2727 East Beecher Street, Adrian, Michigan 49221.

**IT IS FURTHER ORDERED** that the United States Marshal must attempt to **SERVE** the appropriate papers and this order on Jennifer Fahn at 18305 Treanor Street, Saginaw, Michigan 48601.

**IT IS FURTHER ORDERED** that the United States Marshal must attempt to **SERVE** the appropriate papers and this order on Heidi Washington at the Michigan Department of Corrections, Grandview Plaza, 206 E. Michigan Avenue, P.O. Box 30003, Lansing MI 48909.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 1, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 1, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager