UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN PETERSON,

                Plaintiff,

v.

RAVINDRA POLAVARAPU, et al.,

                Defendants.

_____/

Case No. 2:20-cv-13266

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING MOTIONS
## FOR SUMMARY JUDGMENT OR TO DISMISS [18, 19]

Plaintiff Toran Peterson, a Michigan state prisoner, sued Defendants under 42 U.S.C. § 1983. ECF 1. All Defendants, except for Defendants Polavarapu and Fahn moved for summary judgment; Polavarapu moved to partially dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF 18; 19.

Although the Court ordered the United States Marshals Service to serve the appropriate papers on all Defendants, ECF 8, the Marshals Service could not serve Defendant Fahn at her work address, ECF 22, PgID 272–73. Plaintiff has not provided the Court with an address to serve Jennifer Fahn. The Court therefore ordered Defendant Washington, the Director of the Michigan Department of Corrections ("MDOC"), to provide the Court with Jennifer Fahn's last-known address so that the Marshals Service could re-attempt service. *Id.* at 274.

But Defendant Washington notified the Court that "[t]here is nobody with the name of 'Jennifer Fahn' currently or recently employed by MDOC." ECF 23, PgID

1

276. Defendant Washington also explained that "MDOC has attempted to identify who this individual may be[,] . . . [but] MDOC has not been able to identify her." *Id.* Because of that, the Court ordered Plaintiff to show cause for why Jennifer Fahn should not be dismissed for failure to prosecute. ECF 24, PgID 278. Plaintiff timely responded that the Court should not dismiss Defendant Fahn. ECF 25.

Just before the date of this order, counsel for Defendant Washington filed a notice with the Court about the identify of "Jennifer Fahn." ECF 26. As counsel explained, the "Jennifer Fahn" listed in the complaint is actually "Dr. Jennifer Zaha, who maintains an office at Women's Huron Valley Correctional Facility." *Id.* at 283.

The Court greatly appreciates counsel's honest filing of the information with the Court; it was clearly made in the great tradition of counsel serving as an officer of the Court. Second, based on the filing, the Court will order the Clerk of the Court to change the name of "Jennifer Fahn" to "Jennifer Zaha" on the docket.

The Court has reviewed the filings for the pending motions and show cause order and will not hold a hearing because Plaintiff is in prison. E.D. Mich. L.R. 7.1(f)(1). For the reasons below, the Court will grant the summary judgment motions, dismiss Defendant Zaha, and grant Defendant Polavarapu's partial motion to dismiss.

## BACKGROUND

Defendant Polavarapu, a psychologist at the prison where Plaintiff is incarcerated, allegedly intended to boost Plaintiff's Haldol (an antipsychotic) prescription by five milligrams daily. ECF 1, PgID 2 ("[Polavarapu] immediately

mentioned that he wished to take me off of the 10mg [of Haldol] in the morning an[d] at night and raise it to 25mg at night."). Plaintiff allegedly told Polavarapu that he did not want to take the new prescription because he was not used to Haldol yet. *Id.* Polavarapu then allegedly informed Plaintiff that he planned to prepare documents so that Plaintiff could undergo involuntary treatment. *Id.* Polavarapu allegedly believed that Plaintiff was refusing to take the Haldol. *Id.* Plaintiff alleged that he experienced side effects from Haldol such as "muscle tightness, itching, shaking of the hands, difficulty breathing, an[d] [difficulty] swallow[ing]." *Id.*; *see also id.* at 4 ("I began to experience blurred vision, restless legs[,]" and trouble sleeping). Plaintiff claimed that he decided to overdose on Aspirin so that he could avoid the new Haldol prescription. *Id.* at 3.

On February 11, 2020, Plaintiff filed a grievance against Polavarapu for retaliation, falsifying documents, and corruption. ECF 19-2, PgID 254 (grievance number ARF-20-02-0306-17B). MDOC denied the grievance at Step I. *Id.* Plaintiff later appealed to Step II and was denied. *Id.* at 253. After, Plaintiff appealed to Step III, *id.* at 252, and was denied, *id.* at 251. *See also id.* at 225.

On February 13, 2020, Plaintiff attended a hearing for Polavarapu's involuntary treatment request. ECF 1, PgID 3. At the hearing, Plaintiff alleged that Polavarapu improperly diagnosed Plaintiff with Schizophrenia paranoid type. *Id.* During the hearing, Polavarapu also allegedly refused to answer Plaintiff's questions and was hostile throughout the questioning. *Id.* For example, when Plaintiff asked Polavarapu to identify Plaintiff's paranoid delusions, Polavarapu stated that Plaintiff

3

believes the prison "staff was messing with [his] food." *Id.* Plaintiff alleged that Polavarapu lied about Plaintiff's medical diagnosis during the hearing and Polavarapu did so because he was retaliating against Plaintiff for filing a grievance against him. *Id.* In the end, the panel agreed that Plaintiff must undergo involuntary treatment. *See id.*

Two days later, on February 15, Plaintiff allegedly filed a grievance against "the panel hearing members." *See* ECF 19-2, PgID 249 (grievance number ARF-20-05-920-28J). Plaintiff explained that the grievance was "a refiling" "due to the fact that [he] never received a receipt nor [sic] heard anything regarding the original grievance." *Id.* Plaintiff alleged that the panel conducted his hearing improperly by relying on false facts. *Id.* But MDOC received the refiled grievance on May 5, 2020 and denied it at Step I as untimely. *Id.* at 249–50. MDOC explained that Plaintiff "failed to file [the grievance] at the next step of the grievance process, if [he] . . . did not receive a response in a timely manner." *Id.* at 250. Plaintiff then appealed to Step II and claimed that he needed to refile because he "couldn't appeal to the next step" given that he "never received a receipt back." *Id.* at 247. MDOC denied the grievance at Step II. *Id.* at 248. Plaintiff then appealed to Step III and claimed the grievance process was ineffective, *id.* at 247, and MDOC denied the appeal, *id.* at 246. *See also id.* at 224.

Plaintiff filed no other grievances against other Defendants in the present case. ECF 18-3, PgID 148, 170–74.

After Plaintiff filed the present complaint, the Court screened the complaint under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(2). ECF 8. During the screening, the Court "dismiss[ed] Plaintiff's claims for monetary relief against Defendants in their official capacity." *Id.* at 88 (citation omitted). The only claims that remain are the individual damages claims and the injunctive relief against MDOC.

## LEGAL STANDARD

### I.    Summary Judgment

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the

5

light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

II.   <u>Motion to Dismiss</u>

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

**DISCUSSION**

After further reviewing the complaint, the Court will first dismiss the injunctive relief claim against MDOC under 42 U.S.C. § 1997e(c)(2) and 28 U.S.C. § 1915(e)(2)(B). Then, the Court will grant the summary judgment motions for failure to exhaust under the Prison Litigation Reform Act ("PLRA"). The Court will then dismiss Defendant Zaha. Last, the Court will grant Polavarapu's partial motion to dismiss.

6

I.    <u>Injunctive Relief Against MDOC</u>

Although the Court screened the complaint to dismiss "Plaintiff's claims for monetary relief against Defendants in their official capacity," ECF 8, PgID 88, the Court inadvertently failed to screen Plaintiff's request for injunctive relief, ECF 1, PgID 5. In the complaint, Plaintiff requested that the Court "[i]ssue an injunction against the MDOC and Corr. Mental Health orderings" so "[t]hat they create a policy in which requires an investigation of the facts in which are used to panel a prisoner." *Id.*

The Court must dismiss a claim that is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *see* 28 U.S.C. § 1915(e)(2)(B). "[T]he Sixth Circuit has expressly held that the MDOC is immune from suit under the Eleventh Amendment." *Poole v. Mich. Reformatory*, No. 09-cv-13093, 2009 WL 2960412, at *2 (E.D. Mich. Sept. 11, 2009) (collecting cases). Because MDOC and MDOC's mental health services are state agencies, the Court will dismiss claim for the injunctive relief under 42 U.S.C. § 1997e(c)(2) and 28 U.S.C. § 1915(e)(2)(B). *See Reilly v. MDOC*, No. 2:20-11109, 2020 WL 3172610, at *2 (E.D. Mich. June 15, 2020) ("'Because the MDOC is a state agency . . ., the MDOC is entitled to Eleventh Amendment immunity.' The [Bureau of Health Care Services and Mental Health Services] . . . are entities within the MDOC and, therefore, also entitled to Eleventh Amendment immunity.") (quoting *Sims v. Mich. Dep't of Corrs.*, 23 F. App'x 214, 215 (6th Cir. 2001)).

II.   <u>Summary Judgment Motions</u>

Defendants Emami, Zimmerman, Zell, and Washington moved for summary judgment because Plaintiff failed to exhaust his administrative remedies under the PLRA. ECF 18; ECF 19, PgID 200–05. Plaintiff neither responded to the summary judgment motions nor requested relief under Federal Rule of Civil Procedure 56(d). For those reasons, the Court will consider the motions unopposed.

The Court will first detail the PLRA's exhaustion requirement. After, the Court will explain the MDOC grievance procedure. And last, the Court will grant summary judgment to Defendants Emami, Zimmerman, Zell, and Washington because Plaintiff failed to exhaust his administrative remedies.

A.   *PLRA Exhaustion*

Under the PLRA, a prisoner must exhaust his or her administrative remedies before suing. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A prisoner need not plead exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, a prison official must raise failure to exhaust as an affirmative defense. *Id.*

To prove the affirmative defense, the prison official must show "that no reasonable jury" could find that the prisoner exhausted his or her administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012). A prisoner properly "exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 549 U.S. at 217–19). "[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative

8

grievance." *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford*, 548 U.S. at 83). In short, the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 83.

But federal courts may address unexhausted claims in two situations. For example, courts may consider unexhausted prisoner claims if a prison official declined to enforce its "own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits[.]" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). And courts may excuse a prisoner's failure to exhaust if the administrative remedies were unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016).

In practice, the PLRA's exhaustion requirement accomplishes three ends: exhaustion "allow[s] prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected[,] and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (quotations omitted). If a prisoner flouts the prison's grievance procedures, courts typically dismiss unexhausted claims and address only the merits of exhausted claims. *Jones*, 549 U.S. at 220–24.

   B.   *MDOC Grievance Policy*

The primary grievance procedure outlined in MDOC Policy Directive 03.02.130 contains four parts. First, the prisoner must "attempt to resolve the issue with the staff member within two business days after becoming aware of a grievable issue[.]" ECF 19-1, PgID 218 ¶ Q.

Second, if the issue is unresolved, the prisoner may file a "Step I grievance" "within five business days after the [prisoner] attempted to resolve the issue with the appropriate staff." *Id.* at 218 ¶ Q, 219 ¶ W. The prisoner must include the "[d]ates, times, places, and names of all those involved" in the grievance form. *Id.* at 218 ¶ S. The prisoner must send a completed Step I grievance form "to the Step 1 Grievance Coordinator designated for the facility." *Id.* at 219 ¶ W. Usually, the prison must respond within fifteen business days after receiving it. *Id.* ¶ Z. "Grievances and grievance appeals at all steps [are] considered filed on the date received by the [prison's Grievance] Department." *Id.* at 218 ¶ T.

Third, the prisoner may file a Step II grievance form with the prison's Step II Grievance Coordinator if (i) he is dissatisfied with the Step I response, or (ii) he did not receive a timely response. *Id.* at 220 ¶ DD. The prisoner must file a Step II grievance form within ten business days of (i) receipt of the Step I response, or (ii) expiration of the prison's time to respond. *Id.*; *see also id.* at 218 ¶ U (If the prisoner "chooses to pursue a grievance that has not been responded to by staff within required time frames, . . . the [prisoner] may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired."). Put differently, if a prisoner does not receive a Step I response within fifteen days, the prisoner must file a Step II grievance within the next ten days.

Fourth, the prisoner may file a Step III grievance to the prison's Grievance Section if (i) he is dissatisfied with the Step II response, or (ii) he did not receive a timely response. *Id.* at 221 ¶ HH. The prisoner must file a Step III grievance form

within ten business days of (i) receipt of the Step II response, or (ii) expiration of the prison's time to respond. *Id.* In the end, "[t]he grievance process is not complete until either the MDOC responds to the Step III appeal or the time for doing so expires." *Moore v. Westcomb*, No. 2:20-cv-179, 2021 WL 1851130, at *2 (W.D. Mich. May 10, 2021).

    C.    *Plaintiff's Failure to Exhaust*

    The Court will grant summary judgment to Defendants Zimmerman, Zell, and Washington. Plaintiff failed to file a grievance that named any of those Defendants. ECF 18-3, PgID 148, 170–83; *see* ECF 18-2, PgID 140 ¶ S. (The prisoner must include the "[d]ates, times, places, and names of all those involved" in the grievance form.) As a practical matter, "identifying all relevant defendants[] not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process." *Reed-Bay*, 603 F.3d at 324–25. Because no evidence shows that Plaintiff could not access the grievance process, Plaintiff failed to exhaust his administrative remedies for Defendants Zimmerman, Zell, and Washington. The Court will therefore grant summary judgment to those Defendants.

    The Court will also grant summary judgment to Defendant Emami. To start, Defendant Emami agreed that "grievance ARF-20-05-0920-28J named the mental health hearing panel, which included Dr. Emami." ECF 19, PgID 204; *see also* ECF 19-2, PgID 249. But Defendant Emami pointed out that MDOC rejected the grievance

at Step I because Plaintiff refiled it, an action which does not comply with MDOC grievance policy. ECF 19, PgID 204; *see also* ECF 19-2, PgID 249–50. Indeed, MDOC policy requires a prisoner to bring a Step I grievance "within five business days after the [prisoner] attempted to resolve the issue with the appropriate staff." ECF 19-1, PgID 218 ¶ Q, 219 ¶ W. In other words, Plaintiff needed to file a Step I grievance on February 25, 2020, a day later because of Presidents' Day. *See* ECF 19-2, PgID 249 (noting that the date of the incident was February 13, 2020); *see also* ECF 19-1, PgID 218 ¶ Q (noting that the prisoner must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue[.]"). But the only grievance involving the panel hearing members that MDOC received was grievance ARF-20-05-0920-28J. And Plaintiff filed that grievance on May 5, 2020 because all grievances are "considered filed on the date *received* by the [prison's Grievance] Department." *Id.* at 218 ¶ T (emphasis added); *see* ECF 19-2, PgID 249 ("Date *Received* at Step I 5-5-20") (emphasis added). As a result, Plaintiff filed an untimely Step I grievance.

At bottom, no evidence showed that Plaintiff filed a Step I grievance against the panel hearing members before February 25. ECF 19-2, PgID 224–25 (noting the two grievances filed between February 2020 and May 2020 were ARF-20-05-0920-28J and ARF-20-02-0306-17B); *id.* at 254 (grievance ARF-20-02-0306-17B listed only Defendant Ravindra Polavarapu).

Even if Plaintiff had filed a Step I grievance before February 25 and MDOC somehow did not receive the Step I grievance, Plaintiff should not have refiled the

12

Step I grievance. Instead, Plaintiff should have filed a Step II grievance within ten business days after the prison's time to respond expired. ECF 19-1, PgID 220 ¶ DD. That deadline would have been twenty-five days after Plaintiff submitted it. *See id.* ¶ EE ("The due date shall be within 15 business days after receipt of the grievance."). To be sure, if a prisoner "chooses to pursue a grievance that has not been responded to by staff within required time frames, . . . the [prisoner] may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired[.]" *Id.* at 218 ¶ U. In sum, Plaintiff should have filed a Step II grievance—not a second Step I grievance—and he should have filed the Step II grievance in March 2020 rather than in May. Plaintiff therefore failed to exhaust his administrative remedies against the mental health hearing panel, including Defendant Emami. The Court will grant Defendant Emami's summary judgment motion.

III.   <u>Defendant Jennifer Zaha</u>

The Court will forgo reordering the Marshal Service to service Jennifer Zaha with the complaint and summons. Instead, the Court will sua sponte dismiss Defendant Zaha for the same grounds on which the Court granted Defendant Emami's summary judgment motion.

The record shows that Plaintiff failed to file a timely Step I grievance against any Defendant except for Polavarapu. *Supra* Section II. After the Court grants a summary judgment motion based on the affirmative defense of PLRA exhaustion, the Court may "sua sponte dismiss[] a different defendant who did not file a motion or

even raise the defense, so long as the defense applies to that defendant." *Moore*, 2021 WL 1851130, at \*2 (citing *Grand Rapids Plastics, Inc. v. Lakin*, 188 F.3d 401, 407 (6th Cir. 1999)). Because the affirmative defense of PLRA exhaustion applies to Defendant Zaha, an alleged member of the mental health panel, the Court will sue sponte dismiss her from the case. *See* ECF 1, PgID 8.

IV.   <u>Motion to Dismiss</u>

Plaintiff brought several claims against Defendant Polavarapu. Plaintiff first alleged that Polavarapu retaliated against him in violation of his First Amendment right to free speech. ECF 1, PgID 4. Second, Plaintiff alleged that Polavarapu violated his due process rights under the Fourteenth Amendment. *Id.* Third, Plaintiff alleged that Polavarapu violated his Eighth Amendment right to be free from deliberate indifference. *Id.* Fourth, Plaintiff alleged that Polavarapu is liable for state law claims of intentional infliction of emotional distress ("IIED"), willful and wanton misconduct, gross negligence, abuse, and neglect of mental health. *Id.* at 5.

Polavarapu moved to dismiss all claims but the First Amendment retaliation claim and the Fourteenth Amendment claim under Rule 12(b)(6). ECF 19, PgID 207–12.[1] Plaintiff failed to respond to the motion to dismiss. As a result, the Court will construe the motion to dismiss as unopposed. The Court will address each claim in

---

[1] It appears that Polavarapu may have inadvertently failed to argue why the Court should dismiss the First Amendment retaliation claim and the Fourteenth Amendment due process claim. *See id.* at 200 ("Plaintiff has failed to properly plead allegations under *Iqbal* and *Twombly* to sustain claims against Defendant Polavarapu under the First Amendment, Eighth Amendment, Fourteenth Amendment, and state law claims.").

turn. *See Burfitt v. Bear*, No. 1:15-cv-730, 2016 WL 4992017, at *2 (S.D. Ohio Aug. 15, 2016) (Although a complaint may have survived the Court's initial screening under the PLRA and IFP statutes, that finding "does not necessarily preclude granting Defendants' pending motions under Rule 12(b)(6).").

    A.    *Eighth Amendment Deliberate Indifference Claim*

The Court will first dismiss the deliberate indifference claim against Polavarapu. Plaintiff alleged that Polavarapu was deliberately indifferent to Plaintiff in violation of the Eighth Amendment because Polavarapu failed to address the side effects of Haldol. ECF 1, PgID 4.

"To sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To show deliberate indifference, Plaintiff must prove two prongs: one objective, the other subjective.

To satisfy the objective prong, Plaintiff must make one of two showings. Either that he had a serious medical condition that created a serious medical need that went untreated. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation omitted). Or he had ongoing treatment that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citation omitted). To satisfy the subjective prong, he must show that "each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that

15

he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* at 738 (citation omitted). The Court need only address the objective prong to grant Polavarapu's motion.

For the objective prong, Plaintiff needed to show a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). Plaintiff claimed that Polavarapu's failure to address the side effects of his Haldol prescription was a failure to provide treatment in violation of the Eighth Amendment. ECF 1, PgID 4. But failing to warn about the side effects to a patient does not amount to deliberate indifference. *Joyce v. Polavarapu*, No. 4:20-cv-13211, 2021 WL 323248, at *3 (E.D. Mich. Feb. 1, 2021) (collecting cases).

And even if Plaintiff claimed that Polavarapu had failed to treat the Haldol side effects, Plaintiff failed to allege that his side effects "resulted in significant pain sufficient to constitute a serious medical need satisfying the first prong of a deliberate indifference claim." *Id.* at *3. Indeed, Plaintiff's symptoms amounted only to "muscle tightness, itching, shaking of the hands, difficulty breathing, an[d] [difficulty] swallow[ing]." ECF 1, PgID 2; *see also id.* at 4 ("I began to experience blurred vision, restless legs[,]" and trouble sleeping). But none of these side effects "show[] a substantial risk of serious harm." *Joyce*, 2021 WL 323248, at *3.

16

At its core, Plaintiff's deliberate indifference claim against Polavarapu sounds more like medical malpractice. But "[e]xpressions of this sort, however, do not satisfy the requirements of an Eighth Amendment claim." *LaPine v. Corizon Inc.*, No. 18-cv-10750, 2020 WL 5884710, at *4 (E.D. Mich. Mar. 31, 2020) (Murphy, J.); *see also Rhinehart*, 894 F.3d at 744–45 ("'[F]orms of treatment' are generally 'a classic example of a matter for medical judgment' that 'does not represent cruel and unusual punishment.'") (quoting *Estelle*, 429 U.S. at 107). The Court will therefore dismiss the deliberate indifference claim against Dr. Polavarapu.

B.    *Gross Negligence*

The Court will also dismiss the gross negligence claim under Mich. Comp. Laws § 691.1407(2). In Michigan, "gross negligence" "is not an independent cause of action." *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *see also Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 700–01 (6th Cir. 2018) ("Michigan's immunity statute [Mich. Comp. Laws § 691.1407] does not, however, provide an independent cause of action for 'gross negligence,' and plaintiffs may not bypass the immunity statute by 'transforming intentional excessive force or battery claims into negligence claims.'") (quotation omitted).

C.    *Abuse and Neglect*

Plaintiff sued Polavarapu for abuse and neglect of a mental health services recipient under Mich. Comp. Laws § 330.1722. ECF 1, PgID 5. Although "[a] recipient of mental health services shall not be subjected to abuse or neglect," Plaintiff is not a "recipient" under § 330.1722(1). "'Recipient' means an individual who receives mental

health services, either in person or through telemedicine, from the department [of health and human services], a community mental health services program, or a facility or from a provider that is under contract with the department or a community mental health services program." § 330.1100c(13). This definition does not include the Department of Corrections. *See* § 330.1100(a)(22) ("'Department' means the department of health and human services."). Plaintiff never alleged that Polavarapu is an employee of the department of health and human services or that Plaintiff received treatment from the department. *See generally* ECF 1. If anything, the allegations appear to show that Polavarapu worked for the department of corrections and that Plaintiff received treatment through the department of corrections. *See id.* On that basis, the Court will grant the motion to dismiss the abuse and neglect claim.

   D.   *IIED*

   Last, the Court will dismiss the IIED claim against Polavarapu. For one, Plaintiff brought his IIED claim under Mich. Comp. Laws § 418.131(1). ECF 1, PgID 5. That law is a provision in the Michigan Worker's Disability Compensation Act of 1969. But Plaintiff is not an "employee" under the Act and thus § 418.131 does not apply to him. *See* § 418.161(1) (listing the various individuals who would classify as an "employee" under the Act). Because Plaintiff is not an "employee" under the act, Plaintiff has no right to relief under § 418.131(1). *See id.* ("The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease."). The Court will therefore deny the § 418.131(1) claim for failure to state a claim.

Even if the Court were to liberally construe Plaintiff's IIED claim as a claim under Michigan common law, the Court would still deny it. To plead an IIED claim "under Michigan law, a plaintiff must show extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress." *Brent*, 901 F.3d at 678 (citation omitted). "Such conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Jones*, 625 F.3d at 948). That said, "[a] defendant with an intent to cause tortious or even criminal harm is not enough, nor is an intent to inflict emotional distress, nor malice or conduct that might entitle a plaintiff to punitive damages for another tort." *McGrew v. Duncan*, 333 F. Supp. 3d 730, 742 (E.D. Mich. 2018) (citing *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986)).

Plaintiff alleged that Polavarapu committed IIED for several reasons. First, Plaintiff claimed that Defendant stated that Plaintiff is "very assaultive when not properly medicated," that Plaintiff "was having a hard time functioning in the unit," and that Plaintiff is "paranoid delusional." ECF 1, PgID 4. Plaintiff also claimed that Defendant did not "tend[] to [Plaintiff's] side effects." *Id.* at 5. But none of these allegations rise to the level of IIED.

The test for common law IIED is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985). A prison official making up false statements about a prisoner does

not rise to that level of atrocious behavior. *St. Ann v. McLean*, No. 15-11770, 2019 WL 5864496, at *3 (E.D. Mich. Nov. 8, 2019) ("Mr. Officer's letter—asserting that he believed staff gave a false reason for moving Plaintiff to a new cell in the middle of the night—is not enough to create a genuine issue of material fact that could rise to the level of atrocious behavior[.]"). And failing to tend to Plaintiff's side effects of "muscle tightness, itching, shaking of the hands, difficulty breathing, an[d] [difficulty] swallow[ing]" sounds more like it could be medical malpractice—not IIED. ECF 1, PgID 2. Thus, the Court will dismiss the IIED claim for failure to state a claim.

## CONCLUSION AND ORDER

The Court has granted the summary judgment motion, ECF 18, and the motion to dismiss, ECF 19, and dismissed Defendant Zaha. The only remaining claims are the First Amendment retaliation and Fourteenth Amendment due process claims against Polavarapu. ECF 1, PgID 4. The Court will therefore require Polavarapu to answer the complaint as to those claims no later than August 11, 2021. Once Polavarapu answers the complaint, the Court will issue a scheduling order.

**WHEREFORE**, it is hereby **ORDERED** that the Clerk of the Court must **AMEND** Defendant Jennifer Fahn's name on the docket to "Jennifer Zaha."

**IT IS FURTHER ORDERED** that the claim for injunctive relief is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Zimmerman, Zell, and Washington's summary judgment motion [18] is **GRANTED**.

20

**IT IS FURTHER ORDERED** that Defendant Emami's summary judgment motion [19] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Polavarapu's motion to dismiss [19] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Zimmerman, Zell, Washington, Emami, and Zaha are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Polavarapu must **ANSWER** the complaint as to the First Amendment retaliation and Fourteenth Amendment due process claims no later than **August 11, 2021**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 21, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 21, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager